OPINION
{¶ 1.} Defendant the City of Massillon appeals a summary judgment of the Court of Common Pleas of Stark County, Ohio, which entered a declaratory judgment in favor of plaintiffs the Massillon City School District Board of Education and the Perry Local School District Board of Education. Appellant assigns three errors to the trial court:
{¶ 2.} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND BY DENYING SUMMARY JUDGMENT IN FAVOR OF APPELLANT, CITY OF MASSILLON.
{¶ 3.} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT A `NEW EMPLOYEE' UNDER R.C. 5709.82(A)(1)(a) INCLUDES CONSTRUCTION WORKERS WORKING ON PROPERTY NOT EXEMPTED FROM TAXATIONS.
{¶ 4.} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT A `NEW EMPLOYEE' UNDER R.C. 5709.82(A)(1)(b) INCLUDES EMPLOYEES WHO ARE NOT `FIRST EMPLOYED' BY AN EMPLOYER AT THE SITE OF EXEMPTED PROPERTY."
{¶ 5.} Appellant's statement in accord with Loc.R. 9(A) asserts the judgment of the Stark County Court of Common Pleas was inappropriate as a matter of law on the undisputed facts of the case.
{¶ 6.} The two appellee school boards filed their complaint originally against appellant and against the various city council persons in their official capacities. The trial court later dismissed all the city council members as party defendants, and they are not parties to this appeal.
 BACKGROUND {¶ 7.} The Ohio General Assembly enacted R.C. Chapter 5709, which empowers municipalities to grant property tax exemptions to qualified applicants in order to promote business development within the state of Ohio. Personal and property tax exemptions are intended to attract new business and promote expansion of the existing businesses, thereby increasing the long-term tax revenues by means of real property improvement and the addition of new members of the workforce. In the long run, both municipalities and local school districts will profit from the expanded long-term tax bases produced by property tax exemptions. However, in the short term, school districts, which derived most of their revenue base from local and personal property taxes, are adversely affected by tax abatement programs which erode their present tax base.
{¶ 8.} In response to the school district dilemma, and in an attempt to create a compromise between the parties competing for tax dollars, the General Assembly enacted Amended Substitute Senate Bill No. 19 in an effort to balance the interests of local governments to stimulate development with the plight of the school districts which desperately need the present income. Senate Bill 19 substantially modified the property tax abatement program, including R.C. 5709.82, out of which this dispute arises.
{¶ 9.} Briefly, R.C. 5709.62 as amended by Senate Bill 19 allows municipalities to grant up to a seventy-five percent tax abatement for a period of not to exceed ten years without having to obtain prior approval from affected school districts. Here, the City of Massillon has granted tax abatements pursuant to R.C. 5709.62, by entering into an enterprise zone agreement on at least eleven projects within the Massillon City School District, and at least four within the Perry Township School District.
{¶ 10.} "R.C. 5709.82 states in pertinent part:
{¶ 11.} "5709.82 COMPENSATION FOR SCHOOL DISTRICTS FOR REVENUE LOST AS RESULT OF TAX EXEMPTIONS
{¶ 12.} "(A) As used in this section:
{¶ 13.} "(1) "New employee" means both of the following:
{¶ 14.} "(a) Persons employed in the construction of real property exempted from taxation under the chapters or sections of the Revised Code enumerated in division (B) of this section;
{¶ 15.} "(b) Persons not described by division (A)(1)(a) of this section who are first employed at the site of such property and who within the two previous years have not been subject, prior to being employed at that site, to income taxation by the municipal corporation within whose territory the site is located on income derived from employment for the person's current employer. "New employee" does not include any person who replaces a person who is not a new employee under division (A)(1) of this section.
{¶ 16.} "(2) "Infrastructure costs" means costs incurred by a municipal corporation in a calendar year to acquire, construct, reconstruct, improve, plan, or equip real or tangible personal property that directly benefits or will directly benefit the exempted property. If the municipal corporation finances the acquisition, construction, reconstruction, improvement, planning, or equipping of real or tangible personal property that directly benefits the exempted property by issuing debt, "infrastructure costs" means the annual debt charges incurred by the municipal corporation from the issuance of such debt. Real or tangible personal property directly benefits exempted property only if the exempted property places or will place direct, additional demand on the real or tangible personal property for which such costs were or will be incurred.
{¶ 17.} "(B) Except as otherwise provided under division (C) of this section, the legislative authority of any political subdivision that has acted under the authority of Chapter 725. or 1728., sections 3735.65
to 3735.70, or section 5709.40, 5709.41, 5709.62, 5709.63, 5709.632,5709.73, 5709.78, 5709.84, or 5709.88 of the Revised Code to grant an exemption from taxation for real or tangible personal property may negotiate with the board of education of each city, local, exempted village, or joint vocational school district within the territory of which the exempted property is located, and enter into an agreement whereby the school district is compensated for tax revenue that the school district would have received had the property not been exempted from taxation.
{¶ 18.} "(C) This division does not apply to the following:
{¶ 19.} "(1) The legislative authority of a municipal corporation that has acted under the authority of division (H) of section 715.70 or section 715.81 of the Revised Code to consent to the granting of an exemption from taxation for real or tangible personal property in a joint economic development district.
{¶ 20.} "(2) The legislative authority of a municipal corporation that has specified in an ordinance adopted under section 5709.40 or 5709.41
of the Revised Code that payments in lieu of taxes provided for under section 5709.42 of the Revised Code shall be paid to the city, local, or exempted village school district in which the improvements are located in the amount of taxes that would have been payable to the school district if the improvements had not been exempted from taxation, as directed in the ordinance.
{¶ 21.} "If the legislative authority of any municipal corporation has acted under the authority of Chapter 725. or 1728. or section 3735.671,5709.40, 5709.41, 5709.62, 5709.63, 5709.632, or 5709.88, or a housing officer under section 3735.67 of the Revised Code, to grant or consent to the granting of an exemption from taxation for real or tangible personal property on or after July 1, 1994, the municipal corporation imposes a tax on incomes, and the payroll of new employees resulting from the exercise of that authority equals or exceeds one million dollars in any tax year for which such property is exempted, the legislative authority and the board of education of each city, local, or exempted village school district within the territory of which the exempted property is located shall attempt to negotiate an agreement providing for compensation to the school district for all or a portion of the tax revenue the school district would have received had the property not been exempted from taxation. The agreement may include as a party the owner of the property exempted or to be exempted from taxation and may include provisions obligating the owner to compensate the school district by paying cash or providing property or services by gift, loan, or otherwise. Such an obligation is enforceable by the board of education of the school district pursuant to the terms of the agreement.
{¶ 22.} "If the legislative authority and board of education fail to negotiate an agreement that is mutually acceptable within six months of formal approval by the legislative authority of the instrument granting the exemption, the legislative authority shall compensate the school district in the amount and manner prescribed by division (D) of this section.
{¶ 23.} "(D) Annually, the legislative authority of a municipal corporation subject to this division shall pay to the city, local, or exempted village school district within the territory of which the exempted property is located an amount equal to fifty per cent of the difference between the amount of taxes levied and collected by the municipal corporation on the incomes of new employees in the calendar year ending on the day the payment is required to be made, and the amount of any infrastructure costs incurred in that calendar year. For purposes of such computation, the amount of infrastructure costs shall not exceed thirty-five per cent of the amount of those taxes unless the board of education of the school district, by resolution adopted by a majority of the board, approves an amount in excess of that percentage. If the amount of those taxes or infrastructure costs must be estimated at the time the payment is made, payments in subsequent years shall be adjusted to compensate for any departure of those estimates from the actual amount of those taxes."
{¶ 24.} "A municipal corporation required to make a payment under this section shall make the payment from its general fund or a special fund established for the purpose. The payment is payable on the thirty-first day of December of the tax year for or in which the exemption from taxation commences and on that day for each subsequent tax year property is exempted and the legislative authority and board fail to negotiate an acceptable agreement under division (C) of this section."
{¶ 25.} Pursuant to Amended R.C. 5709.82, the City of Massillon is required to attempt to negotiate an agreement to compensate the two school districts, to replace a portion of the tax revenue the schools would have received if the City had not granted the property exemptions. As the trial court points out, the legislature ensured municipalities could not delay the prompt and timely funding of the school districts by giving the parties only six months to enter into a mutually acceptable agreement. If the parties cannot reach a mutually acceptable agreement, then pursuant to R.C. 5709.82, the City must share in the additional income tax revenue generated as a result of the exemption for the yearly payroll of new employees who work at exempted property exceeding $1,000,000.
{¶ 26.} As the trial court noted, there is no dispute as to the legislative purposes, but rather, this dispute centers around the definition of new employees, because how the term is defined will determine how much tax money the City of Massillon must share with the two school districts. Also pertinent is the determination of when the tax exemption commences, because this will determine the time period from which the tax sharing begins.
 II {¶ 27.} In its second assignment of error, the City argues the trial court incorrectly found the term new employee under R.C. 5709.82
includes construction workers working at the site of an Enterprise Zone Agreement.
{¶ 28.} There are two definitions of a new employee under R.C.5709.82. The first definition [R.C. 5709.82(A)(1)(a)] is a person employed in the construction of real property exempted from taxation. Concerning this first definition, the trial court found the crux of the matter is on what date the real property is exempted from taxation. The City argues the property is exempted after the exemption is actually reducing the tax paid. The City urges a real property exemption does not commence until the county auditor has assessed the property and noted the tax exemption on the tax card. Thereafter, the amount of tax paid decreases, and only then have the schools lost revenue. The City argues the use of the word exempted in the definition demonstrates the legislature intended a property tax exemption must have commenced on the property. The City asks us not to award the schools a "windfall", i.e. tax sharing compensation before they have suffered a loss.
{¶ 29.} The School Boards urge the term exempted is intended to describe the specific property to which the statute applies, and is not intended to have any temporal significance. The listing of the exemption on the tax duplicate is dependent upon the county auditor's determination that the property value has increased, and is within the county auditor's discretion to interpret. Appellees the School Boards argue this is not what the legislature intended, because it would lead to completely arbitrary and diverse determinations. By contrast, the School Boards' urge the trial court's decision the statute applies to all employees at any stage of the development or utilization of the property leads to a uniform and reliable determination consistent with the legislature's intent to avoid litigation and delay by means of its six-month deadline.
{¶ 30.} The School Boards argue the trial court's definition is correct because the intent and purpose of the statutory language requires the term exempted be interpreted as the time when the municipality grants the exemption, not when the increased value of the real property is arbitrarily placed on the tax card or the tax paid actually decreases. Thus, all persons employed in any and all phases of construction must be included in the definition of a new employee, because the construction time itself is included in the exemption time.
{¶ 31.} Further, R.C. 5709.62 provides once the enterprise zone is designated, any entitlements granted under the agreement must continue for the number of years specified in the agreement, even if the legislative authority later revokes the designation of the area as an enterprise zone, or if the director of development revokes the zone's certification. The School Boards argue because the rights granted under a tax exemption remain even if the exemption is subsequently revoked or decertified, the right to the exemption vests when the agreement is executed. The School Boards argue the property owner's right to obtain the tax exemption is in full force and effect once the Enterprise Zone Agreement has been approved. The Boards argue because that is the time the right has vested, the only logical construction of the phrase exempted property must be based on the date of the agreement. In other words, the exemption begins at the time the right to the exemption vests.
{¶ 32.} We note the determination of when tax sharing begins will have a great practical significance. The construction projects triggered by the exemption will generate a large income tax revenue, in all probability, greater income tax revenue than after the construction is completed and the new businesses begin to operate.
{¶ 33.} Pursuant to R.C. 323.01, the definitions section of the Revised Code pertaining to tax collection, the tax year runs with the calendar year.
{¶ 34.} Pursuant to R.C. 5713.03, the county auditor shall determine the taxable value of any real property. An improvement to the property will change the valuation, but the statute does not require the auditor to reassess the tax value in any year except a year in which the property is due to be reassessed pursuant to R.C. 5715.24. Thus, the statutory scheme appears to vest considerable discretion with the auditor to determine when a parcel of real estate has increased or decreased in value.
{¶ 35.} The value of the property for tax purposes is therefore the value of the property on January 1 of any given year. When the auditor places the tax exemption on the tax duplicate and determines the value of the improvements to the property, the actual change is effective January 1 of the following calendar year.
{¶ 36.} After the auditor places the tax exemption on the tax duplicate and determines the value of the improvements to the property, the abatement commences even though the effect of the abatement is not felt until the following calendar year because collection of real estate taxes run one year behind the calendar year.
{¶ 37.} R.C. 5709.82, the tax-sharing statute, makes reference to calendar-year computations in Section D, which deals with determining the school district's share of the income taxes if there is no agreement between the City and the School Board.
{¶ 38.} While we acknowledge the validity of the points made by the City and the School Boards, we find we must construe R.C. 5709.82
consistently with the rest of Ohio's taxation structure. We find the exemption begins in the calendar year after the auditor notes the exemption on the tax duplicate. To hold otherwise would create two disparate tax exemption periods, one for computing the tax savings to the property owners who are granted the exemption, and another different time period for computing the tax-sharing triggered by the exemption.
{¶ 39.} We find the trial court erred in holding the tax exemption begins for purposes of R.C. 5709.82, when the legislative authority designates the parcel an enterprise zone and approves the exemption.
{¶ 40.} The second assignment of error is sustained.
 III {¶ 41.} In its third assignment of error, Appellant City of Massillon argues the trial court erred in finding the definition of a new employee may include employees who are not first employed by the employer at the exempted property site.
{¶ 42.} II, supra, deals with the first definition of new employee under R.C. 5709.82. This assignment of error deals with the second definition, contained in R.C. 5709.82 (A)(1)(b). The statute provides persons not described in the first definition, who are first employed at the site of such property and who, within the two previous years prior to the employment at the site, have not been subjected, to income taxation by the municipal corporation in which the site is located, and on the income derived from employment for the person's current employer. The statute further provides a new employee does not include any person who replaces a person who is not a new employee.
{¶ 43.} The City of Massillon suggests a new employee means a new hire. The City notes the statute refers to persons first employed at the site of the property. Thus, in the City's view, persons who have been employed at another site, and then transferred to the exempted site do not meet the definition of first employed at the site. Under the City's definition, if the employer transfers its employees from another site to the exempted property, those persons are not new employees for purposes of computing the School Boards' tax share.
{¶ 44.} The School Boards argue, and the trial court agreed, the statutory language centers around the site of the employment, and not the employee's hiring status. The School Boards argue we must read the statute as "first employed at the site," not simply "first employed."
{¶ 45.} Under the School Board's definition, there will be two types of new employees who fall within the "situs" test. The first group would be newly hired by the employer and first assigned at the enterprise zone site. However, there would be a second group of employees who would qualify as new employees under the statute, and those persons would be workers previously employed by the employer, but subsequently relocated to the enterprise zone site, and who did not pay Massillon City taxes in the prior two years. In sum, Appellees the School Boards assert we must focus our attention on whether the "new employee" is first working at the site of the exemption, not whether the employee has previously worked for this employer.
{¶ 46.} The City argues the trial court's interpretation of the second statutory definition of a new employee in effect eliminates the term "first employed," and thus, warrants reversal because the decision amounts to a judicial amendment of the statute. The School Boards respond, and this court agrees, the trial court did not drop the word "first" from the statute, but read the phrase "first employed at the site" to be the determining factor rather than the phrase "first employed."
{¶ 47.} We find the legislature intended the interpretation utilized by the trial court. The second definition of new employee is far more detailed and convoluted than necessary if the legislature merely intended to say "newly hired employees." Further, the interpretation utilized by the trial court provides a much more straight forward analysis which will provide the schools with the immediate revenue they need to tide them over until the statutory goal, the development of a tax base to benefit both municipalities and schools, is accomplished. This interpretation may also serve to accomplish the goal of expanding the local work force and income tax base.
{¶ 48.} We agree with the trial court the statutory definition includes not just new hirees, but employees relocated to the exempted site who have not paid taxes to the City of Massillon in the previous two years, on wages from the same employer
{¶ 49.} The third assignment of error is overruled.
 I {¶ 50.} In its first assignment of error, the City of Massillon argued the trial court should have granted summary judgment in favor of the City rather than in favor of appellees School Boards. In light of our holdings in II and III, supra, the first assignment of error is sustained in part and overruled in part.
{¶ 51.} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part.
By Gwin, P.J., Hoffman, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part. Costs split between the parties.